**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 18-cv-3062-PAB-MEH**

LOXO ONCOLOGY, INC., STEVEN ANDREWS, JOSHUA BALLARD, BARBARA BRANDHUBER, GABRIELLE KOLAKOWSKI, ELIZABETH MCFADDIN, MEGAN MCKENNEY, ANDREW METCALF, TONY MORALES, and SHANE WALLS,

Plaintiffs and Counterclaim-Defendants,

v.

ARRAY BIOPHARMA INC.,

Defendant and Counterclaim-Plaintiff

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF ARRAY BIOPHARMA INC.'S
AMENDED MOTION FOR PRELIMINARY INJUNCTION**

Loxo has misappropriated and used, and threatens to continue to use, Array's most valuable intellectual property: the trade secret information and know-how upon which Array built its highly successful drug discovery business and platform. Array seeks this Court's intervention to stop Loxo and its employees from improperly gaining a competitive edge—and causing Array irreparable harm—in the drug discovery market as a result of Loxo's past and continuing misappropriation of Array's trade secrets.

Array focuses on the discovery, development, and commercialization of small molecule drugs to treat patients afflicted with cancer and other high-burden diseases. Over the past two decades, Array has spent hundreds of millions of dollars researching and developing its proprietary drug discovery platforms and pipelines. Loxo, in contrast, is (at best) a late entrant to the drug discovery space. Until just over a year ago Loxo, in fact, relied entirely on collaborations with partners—including Array—to discover new drugs. But that all changed on

1

June 23, 2017, when two senior Array research scientists—Barbara Brandhuber and Steven Andrews—simultaneously resigned from Array to join Loxo, Array's then-business partner. Unbeknownst to Array at the time, this was part of Loxo's larger plan to set up a competing drug discovery laboratory, and to use Array employees' knowledge of Array's trade secrets to improperly develop Loxo's own new drugs without paying Array what Loxo otherwise would have been obligated to.

But Loxo did not stop with Brandhuber and Andrews. Over the course of the next year, while building a drug discovery program using Array trade secrets and anticipating the conclusion of the Array-Loxo collaboration, Loxo secretly recruited seven additional Array scientists to join Loxo and, in the process, to take even more trade secrets from Array for Loxo's benefit. On October 26, 2018, those seven Array research scientists also simultaneously resigned and joined Brandhuber and Andrews at Loxo. In the weeks immediately preceding the October 2018 departures—and at the same time they were in secret discussions with Loxo—the seven former Array scientists accessed and/or exfiltrated confidential and proprietary files from Array's drug discovery research pipeline. The former employees now work in virtually identical roles at Loxo developing Loxo's competitive drug discovery research pipeline—███████████

████████████████████████████████████. Unless this Court grants a preliminary injunction preventing Loxo and the former employees from exploiting Array's highly confidential research in Loxo's drug discovery program, Array faces imminent and irreparable harm.

With this Motion, Array thus seeks a narrow, tailored order: (1) enjoining Loxo and the former employees from disclosing, using, and/or otherwise making publicly available Array

2

confidential information related to Array's internal drug discovery research, including through Loxo's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ programs; (2) preventing the former employees from working on the subject matter of Array's trade secret programs and platforms.

As explained further below, and in supporting declarations, this relief is warranted and necessary to preserve Array's rights pending trial.[1] And, furthermore, the balance of equities heavily favors Array here. As to the seven employees who left in October 2018, in light of the fact that Loxo has voluntarily elected to wall off those employees from Loxo programs that overlap with Array's trade secret programs, Array's requested relief merely preserves the status quo. As to Brandhuber and Andrews and the derivative Loxo programs, the irreparable harm to Array from continued, wrongful exploitation of Array's trade secret information by a competitor vastly outweighs any potential hardship to Counterclaim-Defendants until trial on the merits. Finally, the public interest in respecting contract and intellectual property rights further confirms that Array's requested relief is justified under the circumstances.

I. **FACTUAL BACKGROUND**

　　A.　Array Emerges As a Leader In Small Molecule Discovery As a Result of Its Highly Confidential and Proprietary Drug Discovery Programs.

Array, based in Boulder, focuses on the discovery, development, and commercialization of targeted small molecule drugs to treat patients afflicted with cancer and other high-burden diseases. Saccomano Dec. ¶ 3; Ruffolo Dec. *passim*. Array researches and implements combination therapies and drug dosing regimens tailored for individual tumor types and patients.

---

[1] Counsel conferred regarding the relief sought in this Motion, and counsel for Array was told that Counterclaim-Defendants are not willing to stipulate to the relief requested herein.

Saccomano Dec. ¶ 3. The goal of these targeted therapies is to specifically address the underlying mechanisms of the disease by regulating discrete aspects of cellular function affecting cancer cells to a greater extent than normal cells. Since its incorporation in 1998, Array has spent countless hours and over $700 million in researching and developing treatments and products on behalf of itself and several collaboration partners. *Id.* ¶ 6.

As a result of these efforts, Array has developed valuable trade secrets. For example, Array maintains on-going small molecule drug discovery programs in various stages of development, which involve highly confidential and proprietary data regarding the chemical structure and pharmacological and pharmacokinetic properties of promising therapeutic compounds. *Id.* ¶¶ 6-10, 21-34. As explained in the Declaration of Dr. Nick Saccomano, Array's Chief Science Officer, the twelve confidential programs and platforms in Array's drug discovery pipeline (the "Asserted Trade Secrets") have been treated as, and protected as, Array trade secrets. *Id.*; *see also* Ex. 123. The vitality of Array's business is based on its ability to protect this research, and to a competitor the Asserted Trade Secrets have the potential to save years of research and tens of millions of dollars. Saccomano Dec. ¶¶ 21-22. Array takes robust measures to maintain confidentiality over its Asserted Trade Secrets. *Id*. ¶¶ 11-20.

Counterclaim-Defendants Andrews, Ballard, Brandhuber, Kolakowsi, McFaddin, McKenney, Metcalf, Morales, and Walls (collectively, the "Former Employees") worked on and had access to Array's small molecule drug discovery projects, including the Asserted Trade Secrets. Saccomano Dec. ¶¶ 37-38, 41-46, 50. As a condition of their employment at Array, each signed a confidentiality agreement ("Confidentiality Agreement") that required them to protect the confidentiality of internal information about Array's drug discovery programs,

including the Asserted Trade Secrets. Exs. 53-60; Saccomano Dec. ¶¶ 12-15, 38.

    B.    <u>Loxo Partners With Array For Its Drug Discovery Expertise.</u>

In 2013, Array entered into a collaboration agreement with Loxo (the "Collaboration Agreement"), a recently formed pharma company, to develop and commercialize small molecule inhibitors of oncology targets for clinical and commercial development, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Saccomano Dec. ¶ 47; Ex. 126. Under the Collaboration Agreement Loxo acquired rights to kinase inhibitors for TRK, RET, and FGFR proteins, *id.*, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Ex. 126 at 12-13.

The Collaboration Agreement as amended in February 2016 also identified other potential targets, including ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Saccomano Dec. ¶¶ 47-48; Ex. 80. ▉▉▉▉▉ Saccomano Dec. ¶ 48. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id*. The Collaboration Agreement expired on September 30, 2018. *Id.* ¶ 47.

    C.    <u>Loxo Opens a Competing Laboratory in Boulder, Colorado.</u>

Prior to 2017, Loxo had no internal small molecule drug discovery capabilities. Ruffolo Dec. ¶¶ 59-82. In the spring of 2017, around the same time as Loxo elected not to select



5

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ for joint development under the collaboration with Array—w▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Ex. 126 at 12-13)—Loxo decided to build up their own drug discovery capabilities. *Id.* Though that is theoretically acceptable, here the evidence shows that Loxo decided to do so by: (1) leasing office and laboratory space in Boulder and announcing its intention to add in-house drug discovery capabilities (Ex. 76 at 3; Ex. 77 at 3; Ex. 79 at 2, 81); (2) hiring Brandhuber and Andrews—two Array scientific leaders responsible for interfacing with Loxo for the collaboration (Saccomano Dec. ¶ 49)—in July 2017 to set up and run Loxo's new drug discovery laboratory (Ex. 107, Brandhuber Dep. Tr. at 17:4-21, 117:8-14)[2]; and (3) with Brandhuber and Andrews directing Loxo's research, misappropriating Array's drug discovery trade secrets to further its own internal "pipeline of potent and highly selective targeted therapeutics" (Ex. 79 at 4-5); Ruffolo Dec. at ¶¶ 114-194. Indeed, as explained further below, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ruffolo Decl. at ¶¶ 114-194.

    D.    <u>After Weeks of Accessing Files from Array's Confidential Research Pipeline, Seven Array Employees and Contractors Resign On The Same Day to Join Loxo.</u>

On October 26, 2018, as Loxo was ramping up its laboratory operations and drug discovery research, seven additional Former Employees simultaneously resigned from Array to work for Loxo. Pope Dec. ¶ 2. These departures were not spontaneous; Loxo and the Former Employees had been in discussions for months. Ex. 74 at 3; Ex. 75 at 2.[3]

---

[2] Brandhuber, together with Ballard (who did not leave Array until October 2018), ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ while both were still Array employees. *See* Ex. 105, Ballard Dep. Tr. at 99:5-23, 101:3-103:1, 106:24-107:5; Ex. 134.

[3] In mid-September 2018—a little over a month before the mass resignations—Loxo's CEO

In the days and weeks immediately preceding their resignations, these Former Employees accessed and/or exfiltrated highly confidential and proprietary Array trade secret information. Clarke Dec. ¶¶ 5-22; Saccomano Dec. ¶¶ 51-61. As set forth in the Clarke Declaration, the evidence of misappropriation is voluminous. For example, documents exfiltrated by Former Employees include research related ▓▓▓▓▓▓▓ (Trade Secret Nos. 5 and 6) – two targets Loxo was considering pursuing around the same time they were recruiting these Former Employees (Ex. 138) – as well as ▓▓▓▓▓▓ (Trade Secret Nos. 4 and 7). During their exit interviews, Array reminded these Former Employees of their confidentiality obligations to Array and instructed them to immediately return any proprietary Array documents and information in their possession (located anywhere).[4] Pope Dec. ¶¶ 3-7. None of them returned a single document or file. *Id.*

Since November 1, 2018, these Former Employees have been working on Loxo's drug discovery program in substantially similar roles to those they held at Array. Dkt. 8 ¶¶ 22 n.1, 27.

    E.    <u>Loxo's Drug Discovery Research Has Used and Continues to Use Array Trade Secret Information</u>

Preliminary discovery has shown that extensive misappropriation of Array's technology has already occurred and will continue to occur absent injunctive relief. To date, Loxo has given all of the Former Employees ongoing and unrestricted access to Loxo's drug discovery research

---

participated at the Morgan Stanley Healthcare Conference. He was asked how the conclusion of the collaboration with Array would "impact some of the drugs coming out of [Loxo's] pipeline or not?" He responded that Loxo was "doing internal discovery now with some of those [Array] professionals" and "bolstering those people with other people they've worked with in prior lives, and building our own discovery capability to take us to the next 5 years of pipeline target ID. . . . We've obviously been preparing for [the transition] for a couple of years now." Ex. 75 at 2.

[4] As explained in Ms. Pope's Declaration, one Former Employee, Joshua Ballard, left Array's facilities before she could conduct a formal exit interview. Pope Dec. ¶ 3.

facilities, scientists, and systems, and has placed Brandhuber and Andrews in charge of Loxo's drug discovery efforts. Ex. 107 at 17:4-21. Not surprisingly, there is significant evidence that Loxo has been using Array confidential information to accelerate its drug discovery pipeline, with at least two programs entirely derivative of Array's research. Ruffolo Dec. at ¶¶ 114-194.

Loxo's ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

As explained further in Dr. Ruffolo's Declaration, Array confidential information has also been misappropriated into other Loxo programs, including in Loxo's ████████████████ ████████████████ Ruffolo Dec. ¶¶ 149-157; 189-194.

8

II. **LEGAL STANDARD**

A preliminary injunction is an equitable remedy within the discretion of this Court. *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1205 (10th Cir. 2003). The purpose of an injunction is to "'preserve the relative positions of the parties until a trial on the merits can be held.'" *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). The party seeking a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any injury the injunction might cause; and (4) that the granting of a preliminary injunction will not disserve the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). The Defend Trade Secrets Act ("DTSA") and Colorado's Uniform Trade Secrets Act ("CUTSA") specifically provide for injunctive relief to prevent or restrain "actual or threatened misappropriation" of a trade secret. 18 U.S.C. § 1836(b)(3)(A); C.R.S. § 7-74-103.

III. **ARGUMENT**

    A.    Array Is Likely to Succeed on the Merits.

        1.    Counterclaim-Defendants Have Violated the DTSA and CUTSA.

In order to prevail on misappropriation under either the DTSA or CUTSA, Array need only show that (1) it possesses trade secrets; and (2) Loxo and the Former Employees acquired and/or used the trade secrets with reason to know that the trade secrets were acquired by improper means. *See* 18 U.S.C. § 1839(5); C.R.S. § 7-74-102(2). Given the strong evidentiary record, Array is likely to succeed on its trade secret misappropriation claims.

First, Array's confidential and proprietary internal drug research programs plainly qualify

[redacted]

no restriction on the Former Employees' ability to contribute to that ongoing work or to access Loxo's small molecule research facilities, personnel, and systems. *See, e.g.*, Ex. 105, Ballard Dep. Tr. at 30:2-32:20, 34:10-38:4 (testifying about communications regarding ▓▓▓▓▓ ▓▓▓▓▓ These facts demonstrate an imminent threat of misappropriation. *See Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, 2008 WL 2185882, at *1, 4, 17-19 (D. Colo. May 23, 2008) (finding that "Defendants' actions rise to the level of threatened misappropriation" and granting preliminary injunction).[5] As both Dr. Saccomano and Dr. Ruffolo explain, the risk of contamination—intentional or otherwise—when small molecule drug scientists work on the identical targets at competing companies is extremely high. Ruffolo Dec. 73, 77, 82.

### 2. The Former Employees Have Breached Their Employment Agreements.

Array is also likely to prevail on its breach of contract claims against the Former Employees. Array has demonstrated: (1) the existence of a contract; (2) performance by Array; (3) failure to perform by Plaintiffs; and (4) resulting damages. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc). The Agreement prohibits the Former Employees from retaining, possessing, disclosing or using any of Array's confidential and/or trade secret information. Saccomano Dec. ¶¶ 12-15; Exs. 53-60 ¶ 1, Ex. 139 ¶ 1. The Former Employees have already admitted to having improperly retained Array confidential and proprietary documents. Ex. 68 at 2; Saccomano Dec. ¶¶ 51-61; Clarke Dec. ¶¶ 4-22. Array has been and continues to be damaged by the Former Employees' ongoing breaches, given that they work for a competitor (Loxo) developing its small molecule drug discovery research pipeline.

---

[5] *See also Exec. Consulting Grp.*, 2018 WL 1942762, at *8 (finding a "high likelihood" that Plaintiff would establish actual and threatened misappropriation where Defendant had emailed trade secret information to her personal email before leaving to go work for a competitor).

B. Array Has No Adequate Remedy at Law and Will Suffer Irreparable Harm Unless a Preliminary Injunction is Issued.

"When a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed." *Port-a-Pour, Inc. v. Peak Innovations, Inc.*, 49 F. Supp. 3d 841, 872 (D. Colo. 2014) (quoting *Mobius Medical Systems, LP v. Sun Nuclear Corp.*, No. 4:13-CV-3182, 2013 WL 6498981, at *14 (S.D. Tex. Dec. 10, 2013)) (internal quotation marks omitted).[6] Here, there is substantial evidence that Loxo possesses and has used Array's trade secrets, including in at least ▮▮▮▮▮ programs. Ruffolo Dec. ¶¶ 115-47; 158-179. Loxo's own documents prove that. *See* Exs. 108-114, 115 121, 125. And, because ▮▮▮▮▮ programs directly competes with Array's programs and platforms, Loxo's ability to unfairly leap-frog Array—and bypass years of research and development—by using Array's own trade secret information irreparably harms Array, as set forth in the Declarations of Drs. Saccomano and Ruffolo. Saccomano Dec. ¶¶ 8, 10, 14, 22, 24, 39, 50; Ruffolo Dec. ¶¶ 114-194; *Port-a-Pour*, 49 F. Supp. 3d at 872 ("The right to use one's property as one wishes—either to use the property to its own advantage, to exclude another from its use, or to sell, lease, license or transfer such property to another—is fundamental, and being excluded from the rights inherent in one's property constitutes irreparable injury").

Array will also suffer irreparable harm if the Former Employees work in substantially similar roles on the identical targets developed in Array's Asserted Trade Secrets. Here, the

---

[6] *E.g., Exec. Consulting Grp.*, 2018 WL 1942762, at *8; *Arctic Energy Servs., LLC v. Neal*, 2018 WL 1010939, at *3 (D. Colo. Feb. 22, 2018); *Baker Hughes Oilfield Operations, Inc. v. Beard*, 2016 WL 471390, at *1-2 (D. Colo. Feb. 8, 2016); *SBM Site Servs., LLC v. Garrett*, 2011 WL 7563785, at *11 (D. Colo. June 13, 2011).

Former Employees are intimately familiar with Array's drug discovery research pipeline (including the Asserted Trade Secrets) (*see* Saccomano Dec. ¶¶ 42-46); there is evidence that many of them accessed files specific to those programs and platforms while they were discussing their future employment with Loxo (*see* Clarke Dec. ¶¶ 6-23); and Loxo has in fact used proprietary Array information in furtherance of its drug discovery efforts (*see* Ruffolo Dec. ¶¶ 114-194). Accordingly, as in *Xantrex*, Array has and will continue to suffer irreparable harm if Loxo is not enjoined from continued use of the misappropriated technologies and, further, the Former Employees are allowed to work in substantially similar roles on the subject matter of Array's Asserted Trade Secrets – including both Loxo's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, to the extent those programs are not enjoined completely), as well as any overlapping programs that Loxo launches between now and trial. *Xantrex*, 2008 WL 2185882, at *15-17, 23 (granting preliminary injunction prohibiting the former employee from working for any North American competitor for a year upon finding "both current irreparable injury" and" the substantial likelihood and threat of further immediate irreparable harm" where the former employee was "intimately familiar with Xantrex trade secrets and business plans" and hired to a "near identical employment position"). Saccomano Dec. ¶ 50; Ruffolo Dec. ¶¶ 82-83.

    C.    <u>The Balance of Equities Favors Granting an Injunction.</u>

The balance of equities strongly favors granting the relief sought by Array. As shown, the actual and threatened harm to Array is immediate and irreparable. In contrast, with respect to the overlapping ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇s, Loxo already has voluntarily elected to wall off the seven employees who left the same day pending resolution of this motion. Ex. 118 at 11-12.

A preliminary injunction preventing them from moving into those overlapping Loxo programs during the pendency of this suit simply preserves the status quo. *See, e.g.*, *Xantrex*, 2008 WL 2185882, at *14. There are plenty of other research projects these employees could work on—indeed, are currently working on. Array is not seeking to block the sale of any Loxo products. Array is not seeking to ban the Former Employees from continuing to work at Loxo. Presumably Loxo has other scientists who are working on ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ and could continue to do so without the use of Array's misappropriated technology. Indeed, any claim by Loxo that it cannot continue its ▮▮▮▮▮▮▮▮▮▮▮ programs without the use of the Former Employees only underlines the value of Array's trade secret technology and the threat of misappropriation absent a preliminary injunction.

As to the continuation of Loxo's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and Brandhuber and Andrews' involvement in them, the preliminary evidence shows the programs are already tainted because of Loxo's explicit use of the Array trade secrets. Ruffolo Dec. ¶¶ 114-1478. If these specific programs are not enjoined during the pendency of this case, Array will be irreparably damaged from the continued use of those misappropriated trade secrets. A temporary injunction preventing Loxo from pursuing that tainted program is necessary to prevent ongoing, actual misappropriation under DTSA and CUTSA. 18 U.S.C. § 1839(5)(B); C.R.S. § 7-74-102(2)(a)). Moreover, Loxo has no valid interest in continued pursuit of the program during the pendency of this case. *Arctic Energy Servs.*, 2018 WL 1010939, at *3 ("[D]efendants do not have any legitimate interest in using improperly acquired confidential information."). Any alleged harm to Loxo from such an injunction is dwarfed by the harm to Array if years and millions of dollars of its proprietary research is exploited by a competitor.

*Engility Corp*, 2016 WL 7034976, at *12; *see also Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 721 F. Supp. 2d 122, 127-29 (D. Conn. 2010).

      D.      <u>A Preliminary Injunction Will Serve the Public Interest.</u>

Granting a preliminary injunction that prevents Counterclaim-Defendants from misusing Array trade secret information will serve the public interest. The "public interest favors entry of an injunction because the public never benefits from trade secret misappropriation." *Xantrex*, 2008 WL 2185882, at *16.[7] Courts also recognize a public interest in the "validation of agreements and protection of the parties' expectations." *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1373 (Colo. 1979). Granting an injunction will thus not disserve any Colorado public policy but will instead further the public's interest in upholding contractual and intellectual property rights, both of which would be undermined if a preliminary injunction is not ordered. *Xantrex*, 2008 WL 2185882, at *16.

IV.    **CONCLUSION**

For the foregoing reasons, Array requests that the Court grant its Motion in full.

Dated: April 29, 2019

| POLSINELLI P.C. | QUINN EMANUEL URQUHART & SULLIVAN LLP |
|---|---|
| /s/ Charles K. Verhoeven | |
| Sean R. Gallagher, #16863 | Charles K. Verhoeven |
| Megan E. Harry, #35793 | Andrew M. Holmes |
| 1401 Lawrence St., Suite 2300 | James D. Judah |
| Denver, Colorado 80202 | 50 California Street, 22nd Floor |
| (303) 572-9300 | San Francisco, California 94111 |
| sgallagher@polsinelli.com | |
| mharry@polsinelli.com | ***Attorneys for Defendant Array BioPharma Inc.*** |

---

[7] *Loenbro Inspection, LLC v. Sommerfield*, 2018 WL 3659396, at *1-3 (D. Colo. Aug. 2, 2018); *Arctic Energy Servs.*, 2018 WL 1010939, at *3; *Mentor Worldwide LLC v. Craigo*, 2012 WL 12873502, at *4 (D. Colo. Apr. 6, 2012).