PUBLIC REDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-3062-PAB-MEH

LOXO ONCOLOGY, INC., STEVEN ANDREWS, JOSHUA BALLARD, BARBARA BRANDHUBER, GABRIELLE KOLAKOWSKI, ELIZABETH MCFADDIN, MEGAN MCKENNEY, ANDREW METCALF, TONY MORALES, and SHANE WALLS,

Plaintiffs and Counterclaim-Defendants,

v.

ARRAY BIOPHARMA INC.,

Defendant and Counterclaim-Plaintiff

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF ARRAY BIOPHARMA INC.'S MOTION TO REDACT PORTIONS OF THE JUNE 11, 2019 HEARING TRANSCRIPT**

Defendant and Counterclaim-Plaintiff Array BioPharma Inc. ("Array") respectfully submits this motion to redact portions of the public transcript of the hearing held in this case on June 11, 2019. During the hearing, testimony and argument regarding certain Array trade secret programs disclosed, in a few places, the identity of those trade secret programs. The identities of Array trade secret programs are confidential and subject to the Protective Order entered in this case. Due to the confidential nature of this material, Array requests the following limited redactions to the public transcript, to be treated with Level 1 restriction consistent with D.C.Colo.L.Civ.R. 7.2:

| Page | Line(s) | Text |
|------|---------|------|
| 109 | 25 | ██████████ |
| 110 | 3-4 | ██████████ |
| 110 | 4 | ██ |
| 110 | 17 | ██ |
| 110 | 19 | ██ |
| 110 | 20 | ████████████ |
| 162 | 18 | ██ |

CONFIDENTIAL

| 194 | 8 | |
|---|---|---|

A proposed public redacted transcript is attached hereto as Exhibit A.

Array conferred with Counterclaim-Defendants, who oppose all of Array's proposed redactions except for page 162, line 18.

Courts have routinely held that the public's right to access judicial records is outweighed when a party would be commercially harmed by disclosure of competitively sensitive confidential information, including trade secrets. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[T]he right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. . . . [C]ourts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing,"); *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) (recognizing that *Nixon* established that judicial documents "may be sealed if the right to access is outweighed by the interests favoring nondisclosure"); *Braun v. Medtronic Sofamor Danek, Inc.*, 719 F. App'x 782, 801 n.8 (10th Cir. 2017) (granting motion to seal documents, including "sealed portions of the trial transcripts," that "contain sensitive, proprietary information concerning Medtronic's business practices and potentially sensitive technical and financial data" because "much of the information in the documents is highly detailed and specific technical and financial information about Medtronic's spinal products in development"); 18 U.S.C. § 1835(a) ("In any prosecution or other proceeding under this chapter, the court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets . . . ."); Fed. R. Civ. P. 26(c)(1)(G) (allowing courts to require that "a trade secret or other confidential

**CONFIDENTIAL**

research, development, or commercial information not be revealed").

Here, the identities of Array's internal, trade secret programs and platforms are confidential information that Array does not disclose publicly because Array would suffer competitive harm if its competitors – particularly larger biopharmaceutical companies – knew which targets Array was pursuing with active programs before Array had advanced those programs to the clinical stage. Dkt. 115-9 at ¶¶ 8-10; 21-34, 50; *see also* Dkt. 148 at 9:16-13:2; 17:10-13. Indeed, due to the sensitivity and risk of competitive harm, both Array and Counterclaim-Defendant Loxo Oncology, Inc. have designated such information about their internal programs and platforms as Confidential and/or Highly Confidential under the Stipulated Protective Order throughout this case. *See*, *e.g.*, Dkt. 154 [7/1/2019 Discovery Conference Tr.] at 38:9-39:16 (MR. WAKEFIELD: So, Your Honor, this is the information that until it's made public, both parties in this case maintain it's confidential.").

In order to protect Array's confidential information and trade secrets, Chief Judge Brimmer instructed the parties at the preliminary injunction hearing to take steps to avoid revealing the identity of Array's trade secret programs and platforms, including by use of a key to "refer[] to various types of trade secrets without publicly revealing them." Dkt. 148 at 3:23-4:18. Instead of using the key to avoid revealing Array's trade secret programs, however, counsel and witnesses for Plaintiffs and Counterclaim-Defendants asked or answered a number of questions in a way that revealed the identities of certain Array trade secret programs. For example, some of Counterclaim-Defendants' questions specifically identified Array's trade secret programs:

> Q. While you were at Array, were you involved with any ▮▮▮▮ discovery work?
> A. I was not.

**CONFIDENTIAL**

      MR. JUDAH: Your Honor, could we use code names for --
      MR. COUNIHAN: I am sorry, Your Honor.
      THE COURT: Agreed.

*Id.* at 194:8-13. Other times, questions or answers would, in context, identify the trade secret programs. For instance, counsel for Counterclaim-Defendants cross-examined Dr. Robert Ruffolo about his opinions regarding misappropriation of Trade Secret Nos. 1 (Array's ▮▮▮▮) and 8(a) (Array's ▮▮▮▮) in the following way:

    Q. You focus on the statement "▮▮▮▮ is key," correct?
    A. Yes, correct.
    Q. You would agree with me that it's well known that ▮▮▮▮ is important or key for treating ▮▮▮ cancers, correct?
    A. No, no, I wouldn't agree with that.
    Q. Okay. So this is in relation to one of our slides, so this is supposed to be on our program, but -- I apologize, Your Honor. I will try not to even refer to --
    THE COURT: Yeah, you should definitely try to do that. In fact, you should do that.
    Q. Let me restate that question. I didn't catch your answer. It is publicly known that the protein that is Array trade secret 8(a) is associated with cancers found in the ▮▮▮, correct?
    A. And elsewhere.
    Q. Right. So if you want to treat that cancer in the ▮▮▮, it's key to ▮▮▮▮, correct?
    A. Yes.
    Q. And that's all this slide says, doesn't it?
    A. Well, it also says that Loxo is pursuing the same strategy with this target 8(a) penetrating into compartment covered by trade secret 1 in an area where Array had been working for quite some time generating a good deal of data at a time when Loxo didn't have any data.
    Q. And so Array has a particular way of addressing trade secret No. 1; is that right?
    A. I don't understand.
    Q. So as I understand it and as exemplified by Slide 35, Array has a particular way of addressing the problem associated with trade secret No. 1, correct?
    A. Yes, yes. Array has this pretty sophisticated scheme for addressing this trade secret.

*Id.* at 109:25-111:10. Similarly, during cross-examination regarding her work at Array on Trade Secret No. 8(a) (Array's ▮▮▮▮), Barbara Brandhuber, a witness for Counterclaim-Defendants, provided the following answer:

> Q. So is it fair to say that you and the Array team in doing this screening for 8(a) inhibitors gained insight and information about the compounds that could potentially inhibit 8(a) mutants?
> A. That could potentially inhibit 8(a) that were using this technology.
> Q. I am sorry, is that a yes?
> A. That is work to understand this platform. So yes, there was insight gained using that technology that some things could inhibit mutant ▮▮▮ for the one that was described.

*Id.* at 162:9-18.

Redacting the above-mentioned portions of the hearing transcript, and treating them with Level 1 restriction, is therefore appropriate. Array has been careful to narrowly limit its request for redaction to the portions necessary to protect Array's confidential information related to its trade secret programs and platforms. The redactions Array proposes are extremely limited – just twelve words from a 279 page transcript. Here, both the competitive harm to Array from public disclosure of this trade secret information, and the narrow scope of the requested redactions, are sufficient to overcome the presumption of public access to court proceedings. *See, e.g., Jones v. Avidyne Corp.*, No. CV 06-1656-ST, 2010 WL 3829215, at *2 (D. Or. Sept. 24, 2010), *aff'd*, 467 F. App'x 555 (9th Cir. 2012) (granting motion to redact hearing transcript, where the "vast majority of the transcript remains unredacted and available to the public"); *Exelis, Inc. v. SRC, Inc.*, No. 5:12-CV-0858 GTS/TWD, 2013 WL 5464706, at *1-2 (N.D.N.Y. Sept. 30, 2013) (granting plaintiff's motion to redact trade secret information from preliminary injunction hearing transcript, where plaintiff's "requested redactions…are narrow and regard information that is both confidential and sensitive"); *BTG Int'l Ltd. v. Amneal Pharm. LLC*, No. 15CV5909KMJBC, 2018 WL 2464500, at *1 (D.N.J. June 1, 2018) (finding that there was good cause to redact portions of hearing transcript, where transcript contained "highly confidential" information "related to research and development…that is not known to the general public").

**CONFIDENTIAL**

For the foregoing reasons, Array respectfully requests that the Court grant its Motion to Redact Portions of the June 11, 2019 Hearing Transcript.

Dated: July 22, 2019

| **POLSINELLI P.C.** | **QUINN EMANUEL URQUHART & SULLIVAN LLP** |
|---|---|
| | /s/ James D. Judah |
| Sean R. Gallagher, #16863 | Charles K. Verhoeven |
| Megan E. Harry, #35793 | Andrew M. Holmes |
| 1401 Lawrence St., Suite 2300 | James D. Judah |
| Denver, Colorado 80202 | 50 California Street, 22nd Floor |
| (303) 572-9300 | San Francisco, California 94111 |
| sgallagher@polsinelli.com | |
| mharry@polsinelli.com | ***Attorneys for Defendant and Counterclaim-Plaintiff Array BioPharma Inc.*** |

**CONFIDENTIAL**

## CERTIFICATE OF SERVICE

      I hereby certify that on this 22nd day of July 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record in this case.

      *s/ James D. Judah*